**COMMONWEALTH OF
PENNSYLVANIA,
Appellant,**

v.

**Parmish Lalit KOHLIE, Appellee.**

Superior Court of Pennsylvania.

Argued Aug. 20, 2002.

Filed Oct. 22, 2002.

Reargument Denied Jan. 3, 2003.

James R. Gilmore, Assistant District Attorney, Pittsburgh, for Commonwealth, appellant.

David B. Chontos, Turtle Creek, for appellee.

Before: JOHNSON, MUSMANNO and BOWES, JJ.

BOWES, J.:

¶ 1 The Commonwealth appeals from the September 4, 2001 order granting Appellee's pretrial motion to dismiss the charge of driving under the influence of alcohol with a blood alcohol content of 0.10% or greater. For the following reasons, we reverse and remand.

¶ 2 At approximately 2:35 a.m. on August 2, 2000, Appellee, Parmish Kohlie, lost control of his gray 1992 Saab 900 sedan while driving south in the right lane on State Route 65, a four-lane highway. The vehicle swerved to the left, crossed every lane of traffic, and struck a concrete wall that borders the west side of the roadway. Upon impact, the vehicle veered to the right, crossed four lanes of traffic a second time, and collided with a concrete wall that borders the east side of the roadway. Slowed only slightly by the second collision, Appellee's vehicle veered yet a third time across the roadway and drove straight into the west side barrier where it finally came to rest. All four passengers in Appellee's vehicle sustained injuries.

¶ 3 Pennsylvania State Police Trooper Thomas K. Plunkard arrived on the scene to investigate the accident after medical personnel were summoned to the area. He observed Appellee standing next to the concrete barrier on the west side of the roadway while ambulance crews assisted Appellee's passengers. Officer Plunkard approached Appellee and spoke with him. During the conversation, the officer noticed that Appellee's eyes were bloodshot and glassy, his breath smelled of alcohol, and his speech was slurred. Shortly thereafter, medical personnel transported Appellee to Presbyterian Hospital in Pittsburgh. The parties agree that a blood serum test performed at the hospital approximately seventy minutes after the accident indicated that Appellant's BAC was 0.124% (124.0 mg/dl).

¶ 4 Based on these events, police charged Appellee with four counts of aggravated assault by vehicle while driving under the influence, four counts of recklessly endangering another person, one count of driving under the influence of

alcohol to a degree rendering one incapable of safe driving, one count of driving under the influence of alcohol with a BAC of 0.10% or greater, and five summary offenses. At a preliminary hearing on February 13, 2001, Appellee was held for court on all charges.

¶ 5 On August 6, 2001, Appellee filed an omnibus pretrial motion requesting, *inter alia*, dismissal of the charge of driving under the influence of alcohol with a BAC of 0.10% or greater. Observing that blood serum values must be converted to whole blood ratios in DUI prosecutions, he asserted that the Commonwealth's evidence was insufficient to establish a *prima facie* case on this charge due to the possibility that his BAC could have been as high as 0.11% or as low as 0.09% at the time of the accident, depending on the conversion factors used to convert his blood serum value to its whole blood equivalent.

¶ 6 In support of this argument, Appellee supplied the court with a document used by individuals who perform blood tests on DUI suspects at the University of Pittsburgh Medical Center of McKeesport, an affiliate of Presbyterian Hospital, which stated, "Recognized toxicological blood research ... has determined that serum/plasma and whole blood ratios vary from 1.10 to 1.35." Omnibus Pretrial Motion, 8/6/01, Exhibit B. According to the document, when converting a serum value to its whole blood equivalent, the "lowest value is derived by dividing the plasma/serum value by 1.35" and the "highest value is derived by dividing the plasma/serum value by 1.10." *Id.* Since these conversion factors suggest that Appellant's post-accident BAC ranged from 0.09% to 0.11%, Appellee argued that the charge should be dismissed because the Commonwealth could not establish by clear evidence that Appellee's BAC was 0.10% or greater at the time of the accident.

¶ 7 On August 6, 2001, following oral argument, the trial court invited the parties to submit case law concerning the blood serum conversion issue and scheduled another hearing for September 4, 2001. On that date, the trial court dismissed the DUI charge because none of the conversion factors presented to the court conclusively established that Appellee's whole blood alcohol content was 0.10% or greater when the accident occurred. Despite assurances by the Commonwealth that it had located an expert witness who was prepared to testify that Appellee's BAC exceeded 0.10% at all relevant times, the trial court concluded that the Commonwealth could not rule out the possibility that Appellee's BAC may have been less than 0.10% and granted the motion to dismiss. This appeal followed.

¶ 8 The Commonwealth asserts that the trial court erroneously concluded that it failed to establish a *prima facie* case on the charge of driving under the influence of alcohol with a BAC of 0.10% or greater. The Commonwealth's argument is twofold. First, it claims that it was entitled to the statutory presumption relating to *prima facie* evidence of DUI violations codified in 75 Pa.C.S. § 3731(a.1) because it informed the trial court that it planned to introduce expert testimony at trial indicating that Appellee's BAC exceeded 0.10% at the time of the accident. Alternatively, the Commonwealth contends that even if the statutory presumption was not warranted under these facts, it nevertheless established a *prima facie* case because the proposed expert testimony, if accepted as true, would permit the jury to find Appellee guilty of the crime charged. Based on our review of the record, the parties' briefs, and relevant case law, we find that the expert testimony proffered by the Commonwealth was sufficient to establish

a *prima facie* case; accordingly, we reverse and remand.

¶ 9 At the outset, we note that Appellee's motion to dismiss the DUI charge was in the nature of a *habeas corpus* petition. A petition for writ of *habeas corpus* is the proper vehicle for challenging a pretrial finding that the Commonwealth presented sufficient evidence to establish a *prima facie* case. *Commonwealth v. Huggins,* 790 A.2d 1042 (Pa.Super.2002). Therefore, a pretrial petition for *habeas corpus* relief is similar in purpose to a preliminary hearing. *Commonwealth v. Scott,* 396 Pa.Super. 339, 578 A.2d 933 (1990). We will not reverse a trial court's decision to grant or deny a petition for writ of *habeas corpus* absent a manifest abuse of discretion. *Commonwealth v. Huggins, supra.* Furthermore, our scope of review is limited to determining whether a *prima facie* case was established. *Commonwealth v. Saunders,* 456 Pa.Super. 741, 691 A.2d 946 (1997). In criminal matters, a *prima facie* case is that measure of evidence which, if accepted as true, would justify the conclusion that the defendant committed the offense charged. *Commonwealth v. MacPherson,* 561 Pa. 571, 752 A.2d 384 (2000).

¶ 10 As noted, the parties in this case agree that the blood serum test conducted at Presbyterian Hospital indicated that Appellee's BAC was 0.124% following the accident. In order to convict Appellee of driving under the influence of alcohol, however, the Commonwealth cannot rely on the blood serum analysis alone; it must introduce evidence of alcohol by weight in terms of whole blood. *See Commonwealth v. Michuck,* 454 Pa.Super. 594, 686 A.2d 403 (1996) (in order to convict defendant of driving under influence of alcohol, Commonwealth must inform factfinder that test was performed on blood serum rather than whole blood and provide evidence of alcohol by weight in defendant's blood; evidence in form of blood serum value, without conversion to whole blood equivalent, will not suffice); *accord Commonwealth v. Newsome,* 787 A.2d 1045 (Pa.Super.2001). "The statutory alcohol content limit, 0.10%, refers to the alcohol content of whole blood, not blood serum." *Michuck, supra* at 406. Blood serum is that which remains after blood cells and fibrin, the blood's clotting agent, are separated from the plasma. *Id.* Since serum is less dense than whole blood, the weight per volume of the alcohol in the serum will exceed the weight per volume in the whole blood. *Id.* Thus, an acceptable conversion factor is necessary to compute the corresponding alcohol content of the original whole blood sample. *Id.*

¶ 11 By letter dated August 28, 2001, the Commonwealth informed the trial court that it intended to call an expert witness, a toxicologist from the Allegheny County Crime Laboratory, who would testify that using scientifically accepted conversion factors, she determined that Appellee's whole blood alcohol content exceeded 0.10% at the time of the accident. The trial court, however, concluded that the Commonwealth failed to meet its burden of proof because it did not present the court with conversion factors which, if accepted as true, would have established that Appellee's BAC was 0.10% or greater when the accident occurred. On appeal, the Commonwealth asserts that by implicitly rejecting the toxicologist's proposed testimony, the trial court invaded the province of the jury and "placed an unduly high burden upon the Commonwealth" at the pretrial *habeas* proceeding. Commonwealth brief at 18. We agree.

¶ 12 Contrary to the trial court's view, the Commonwealth was not required to establish Appellee's BAC by clear evi-

dence at this stage in the case. *See Commonwealth v. Saunders, supra* (proof of guilt beyond a reasonable doubt not required at pretrial *habeas corpus* hearing). *Cf. Commonwealth v. Newsome, supra* (in order to sustain DUI conviction, Commonwealth must present jury with clear evidence converting serum test result to whole blood equivalent equal to or greater than 0.10%). To the contrary, the Commonwealth satisfies its burden of proof as long as it presents evidence that establishes sufficient probable cause to warrant belief that the defendant committed the offense. *Commonwealth v. Huggins, supra.* The Commonwealth's evidence should be such that if presented at trial and accepted as true, the judge would be warranted in permitting the case to go to the jury. *Id.*

¶ 13 In the case at bar, the Commonwealth certified in good faith that it would present expert testimony at trial indicating that Appellee's blood alcohol level exceeded the 0.10% statutory limit. Although the Commonwealth did not reveal the conversion factors upon which the expert's opinion was based, this certification reduced the likelihood that Appellee was being prosecuted for a crime with which there was no evidence of his involvement. *See, e.g., Commonwealth v. Tyler,* 402 Pa.Super. 429, 587 A.2d 326 (1991) (preliminary hearing serves to avoid incarceration or trial of defendant unless sufficient evidence exists to establish that crime was committed and to connect defendant with crime); *see also Commonwealth v. Troop,* 391 Pa.Super. 613, 571 A.2d 1084 (1990) (when Commonwealth certifies in good faith at preliminary hearing that prosecution witness will be available to testify at trial, it is less likely that persons unconnected with crime will be prosecuted). Moreover, as discussed below, the toxicologist did not have to testify at the *habeas*

*corpus* proceeding because the Commonwealth informed the trial court that the witness would be available to testify at Appellee's trial.

¶ 14 In *Commonwealth v. Rick,* 244 Pa.Super. 33, 366 A.2d 302 (1976), this Court held that the Commonwealth established a *prima facie* case on a DUI charge even though the only evidence of intoxication presented at the preliminary hearing was a chemist's report indicating the defendant's blood alcohol level. Although the report was hearsay and therefore would have been inadmissible by itself at trial, we concluded that the district justice properly overruled the defendant's hearsay objection because the report was admitted for the purpose of determining whether a crime had been committed and whether the defendant was involved. Since the chemist who prepared the report was available to testify at the defendant's trial, we found that no error was committed at the preliminary hearing.

¶ 15 In this case, as in *Rick,* the Commonwealth proffered hearsay evidence regarding Appellee's level of intoxication to show that a DUI offense had been committed and certified that its expert witness would be available to testify at trial. Appellee attempted to discredit the Commonwealth's evidence by arguing that the scientific data contained in his motion to dismiss was irrefutable, and the trial court found Appellee's argument persuasive because the Commonwealth did not disclose the conversion factors upon which its expert relied. The trial court erred in this regard, however, because credibility is not an issue at pretrial proceedings. *See Commonwealth v. Tyler, supra* (defendant's inability to test credibility of hearsay declarant through cross-examination at preliminary hearing did not render proceeding constitutionally infirm because credibility is not an issue at preliminary

hearings). Thus, since the Commonwealth indicated that it was not going to rely solely on hearsay evidence to establish Appellee's BAC at trial and the toxicologist's proposed testimony, if accepted as true, would have warranted the trial court to allow the case to go to the jury, we find that the Commonwealth's offer of proof established sufficient probable cause to justify the conclusion that Appellee committed the offense charged.

¶ 16 The following cases provide additional support for our decision in this case. In *Commonwealth v. Michuck, supra,* this Court upheld a conviction for driving under the influence with a BAC of 0.10% or greater despite the hypothetical possibility that the defendant's BAC could have dropped below the legal limit if a different conversion factor had been utilized. In *Michuck,* a blood serum test conducted within three hours of the defendant's arrest indicated that his BAC was 184.7 mg/dl. At trial, the Commonwealth presented the testimony of a certified medical technologist who stated that the conversion factor of 1.18 had been used in studies reported in reputable medical journals and was generally accepted within the scientific community. Applying that conversion factor, the witness opined that the defendant's whole blood alcohol content was 0.15%, well above the 0.10% statutory limit. On appeal, the defendant argued that the conversion factor adopted by the Commonwealth was arbitrary and violative of his due process and equal protection rights, but this Court, noting the validity of the studies upon which the evidence was based, declined to "delve into hypothetical fact patterns" involving different conversion factors. *Id.* at 407.

¶ 17 Similarly, the Commonwealth's expert witness in *Commonwealth v. Newsome, supra,* used a "high end conversion factor of 1.10 and a low end conversion factor of 1.35" to calculate a range of potential blood alcohol levels. The defendant in *Newsome* did not dispute that a blood serum test indicated a blood alcohol level of 140.3 mg/dl, but he challenged the validity of the studies from which the Commonwealth's conversion factors were derived. To this end, the defendant's lone witness, a toxicologist, identified flaws in the studies and testified that that no one could determine the defendant's BAC with any degree of scientific certainty. On cross-examination, however, the defendant's expert conceded that the studies relied upon by the Commonwealth's expert were scientifically valid and that using the conversion factors specified therein, it was possible to ascertain the defendant's BAC. The defendant was convicted of driving under the influence of alcohol with a BAC of 0.10% or greater, and we affirmed the judgment of sentence, observing that both the high and low end conversion factors indicated a BAC greater than 0.10%.

■ ¶ 18 As the preceding cases demonstrate, defendants charged with DUI offenses regularly contest the propriety of conversion factors used by the Commonwealth at trial, and the Commonwealth may apply different conversion factors in different cases, as long as they are generally accepted within the scientific community. Although Appellee correctly points out that the conversion factors utilized in *Newsome* indicate whole blood alcohol levels ranging from 0.09% to 0.11% in the instant case, we note that the conversion factor of 1.18 employed in *Michuck* indicates that Appellee's BAC equaled the statutory limit, 0.10%. Thus, we reject Appellee's contention that the Commonwealth cannot establish that his BAC was 0.10% or greater at the time of the accident. Moreover, like the *Michuck* Court, we decline to grant relief based upon the hypothetical possibility that Appellee's BAC

may have been less than 0.10%, depending on which conversion factors are used. If Appellee wants to challenge the scientific validity of the conversion factors used by the prosecution, he may do so through his cross-examination of the Commonwealth's expert or he may call a rebuttal witness. Whatever strategy he chooses, however, the jury must make the credibility determination that controls the outcome of the case.

¶ 19 For the reasons stated above, we find that the expert testimony proffered by the Commonwealth was sufficient to establish a *prima facie* case of driving under the influence with a BAC of 0.10% or greater. Accordingly, we reverse the trial court's order and remand for proceedings consistent with this memorandum.

¶ 20 Order reversed. Jurisdiction relinquished. Case remanded for further proceedings.

¶ 21 Judge Musmanno notes his dissent.